MOSES COHN v. WILLIAM M. CARTER ET AL.

[46 South., 60.]

SETOFF AND COUNTERCLAIMS. *Estates of decedents. Code* 1906, § 747. *Mutual dealings. Insolvent estates. Probation of claims. Code* 1906, § 2107.

Code 1906, § 747, providing that in cases of mutual dealings between two or more persons and one or more of them shall die before an adjustment of such dealings, the lawful demands of the parties against each other shall be a good payment, or setoff, to the amount thereof, although the estate of the decedent be insolvent, and only the balance due shall be the debt, does not relieve the surviving party from probating any claim which otherwise should be probated against the estate of the decedent.

FROM the chancery court of Sunflower county.

HON. PERCY BELL, Chancellor.

Cohn, appellant, was complainant in the court below; Carter and another, appellees, were defendants there. From a decree granting complainant only a part of the relief for which he prayed he appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*Baker & Moody,* for appellant.

The only question presented for the consideration of the court is as to whether or not the $250 paid by Cohn, the appellant, to Anderson on December 16, 1903, should be allowed as a credit on the $700 note set up in the cross-bill, and whether the balance due on this note after deducting this $250 only should be allowed as a set off against the amout due the complainant.

The appellant is unquestionably entitled to recover and subject the land in controversy to the payment of the amount due on the $1,200 note sued on, with interest according to its tenor, and one-half of the amount paid for lumber for building a house on the land in controversy, and the taxes for the years 1904,

1905 and 1906, which amounts aggregate $1,787.20. The appellees of course are entitled to a credit against this amount of the $700 note set up in the cross-bill, but our contention is that only the balance due on this note, after deducting the $250 paid by Cohn to Anderson on December 16, 1903, should be allowed as a set-off.

This is a suit by the complainant to collect a debt about which there is no dispute. The defendants answered setting up a claim against the complainant, which they asked to be set off against the amount demanded. The complainant replied to this and set up another debt due by defendant's intestate, which he asked to be set off against the defendant's set-off, and only the balance be allowed as a set-off against the debt sued on. The estate of Anderson is insolvent, and had been declared insolvent by the chancery court of Sunflower county. While there might be some dispute at law as to the right of the plaintiff to set off a demand against a set-off filed by the defendants, there can, we take it, be no doubt of the complainant's right to use such a set-off in chancery where there is a supervening equity, such for instance as the insolvency of the defendant's intestate. 25 Am. & Eng. Enc. Law (2d ed.), 542, 543, 544. In the same book, at page 500 *it is said that "The right of* set-off was designed to protect a defendant, consequently there cannot, under the generally prevailing statutes, be a set-off against a set-off." While this may be true in some of the states, still we contend that if this was a suit at law and not in equity Cohn as the plaintiff would be entitled to set off the $250 against the $700 set up as a set-off by the defendants. We make this contention by virtue of Code 1906, § 747. The court below was evidently of the opinion that the words "mutual dealings" used in the section quoted meant "mutual accounts," and that the facts in this case did not show mutual accounts between Cohn and Anderson; in other words, that the evidence showed entirely distinct transactions, and that the statute only had reference to the balance due on mutual accounts.

*Johnson & Neill,* for appellees.

The only question in this case is whether there was error committed by the chancellor in disallowing complainant's claim for $250. The account for $250 against this insolvent estate was never probated. Appellant contends that the probation of the claim was unnecessary because of Code 1906, § 747 (Code 1892, § 689). We submit that the statute is not applicable to the facts of this case. The account for $250 was a simple isolated transaction, it did not arise out of "mutual dealings." In 1903, according to appellant's contention, the intestate borrowed $250 from him. Afterwards in 1906 the appellant executed a note to the intestate for $700. There was no mutual current account between the two. They were two separate transactions taking place nearly three years apart. Most assuredly this account of $250 should have been probated against the estate to give it standing in this proceeding.

The $250 borrowed by Anderson in 1903 was not for use in the improvement of the land for the purchase money of which this suit was brought. This transaction was entirely disconnected from the dealings of these parties in reference to this land and is not a lien upon it.

WHITFIELD, C. J., delivered the opinion of the court.

On November 13, 1903, Cohn by deed conveyed to A. E. Anderson, Jr., an undivided one-half interest in a certain tract of land for the consideration of $1,200, evidenced by Anderson's note for that amount, due ninety days after date. Anderson died January 31, 1906, leaving as his only heir at law one child, Myrle Anderson, one of the defendants and appellees herein. William M. Carter was appointed administrator of Anderson's estate, and the estate was declared insolvent. This bill was filed September 3, 1906, against William M. Carter, as administrator, and against Myrle Anderson, to enforce the collection of said note. On October 19, 1906, the defendants answered the bill, and made their answer a cross-bill, in which they set up a note

for $700 given by Cohn, the appellant, to Anderson, on January 9, 1906, the amount due on which note they asked to be allowed, as set-off, against the $1,200 note sued on. Cohn, the appellant, answered the cross-bill on December 9, 1907, and set up that he had paid $39 for lumber for building a house on the land, one-half interest in which he had sold to Anderson, and also set up that he had paid the taxes on the land in the years 1904, 1905, and 1906. In addition to this he claimed that he had advanced Anderson on December 16, 1903, $250. This amount seems to have been entirely independent, so far as the record shows, of this land deal—a separate and distinct transaction. The amount due by Anderson's estate for lumber, and the amount of taxes for the years 1904, 1905, and 1906, are set out in the record. The court below held that the complainant, Cohn, was entitled to a decree for the amount of the $1,200 note, with interest according to its tenor, and to one-half of the amount paid by Cohn for lumber and for taxes, less the amount due by Cohn to Anderson on the $700 note set up in the cross-bill of the administrator, with interest according to its tenor. All these calculations being duly made, it appears, and it is so agreed by a written agreement of both parties set out in the record, that the true amount of the decree for Cohn should have been $1,118.92. By some unaccountable clerical mistake, however, the amount of the decree as actually entered was for only $730.20. It is also set out in this written agreement of counsel that if this court shall hold that the $250 paid by Cohn to Anderson on December 16, 1903, should be allowed as a credit on the $700 note, the case shall be reversed at the cost of the appellees, and, if not, that it shall be reversed at the cost of the appellant; the reversal, of course, being predicated of this clerical error in the amount of the decree above set out.

The only question for any serious consideration is whether the $250 were properly disallowed by the chancellor. It is to be further noted carefully that this is a bill in equity, and that

Anderson's estate was insolvent, and that these set-offs are claimed on equitable principles. It is insisted by the appellant that the $250 should have been allowed here as a set-off under Code 1906, § 747, which is as follows: "Where there shall have been mutual dealings between two or more persons, and one or more of them shall die before an adjustment of such dealings, the lawful demands of such parties against each other shall be a good payment or set-off to the amount thereof, notwithstanding the estate of one or more of said deceased persons shall be insolvent, and only the balance due shall be the debt." It is argued that the phrase "mutual dealings" makes a broader right than the phrase "mutual accounts" would give, and that this is not a case of mutual accounts, but of mutual dealings, and that hence the $250 should have been allowed as set-off. This amount of $250, seems to have been simply a loan, entirely disconnected from the land transaction. No note was taken for the money. It was simply charged on open account on the books of the store, and, what is specially to be noted, this account was never probated against the estate. The primary object of this statute manifestly was to provide that the full amount of any lawful demand that a living party might have against the insolvent estate of a deceased party, with whom the living party may have had mutual dealings, may be allowed as a full demand, notwithstanding the death and the insolvency. The trouble here chiefly is, in our judgment, that this account, entirely disconected from the land transaction, ought to have been probated against the estate within the time allowed by law. Not having been so probated, it was properly disallowed by the chancellor. The object of the statute being such as we have indicated, it is clear that that statute does not avail to relieve against the duty of probating such an account as this, relating to an entirely distinct transaction from the one sued on, against such insolvent estate. The statute never had any such purpose as that.

We think the action of the chancellor on the legal proposi-

tions presented to him was, therefore, correct. By reason of the mistake in the amount of the decree, we, in accordance with the written agreement in the record, hereby reverse the decree for that error alone, and remand the clause; the costs to be paid, in accordance with the agreement, by the appellant.

*Reversed.*